*775 OPINION
By the Court,
Rose, J.:
Appellant Wilbert Emory Leslie robbed a convenience store and fatally shot the on-duty clerk. The district court convicted Leslie, pursuant to a jury verdict, of burglary, robbery with the use of a deadly weapon, and first-degree murder with the use of a deadly weapon. The jury found four aggravating circumstances: (1) the murder was committed by a person who knowingly created a great risk of death to more than one person, (2) the murder was committed by a person engaged in or fleeing from a burglary, (3) the murder was committed by a person engaged in or fleeing from *776 a robbery, and (4) the murder was committed at random and without apparent motive. The jury concluded that the aggravating circumstances outweighed the mitigating circumstance — that Leslie had no significant criminal history — and imposed a sentence of death.
In the opinion affirming Leslie’s conviction and sentence, this court concluded that the evidence did not support the jury’s finding as to the first aggravator and struck it.[1] We then concluded that sufficient evidence supported the remaining aggravators, reweighed the aggravating and mitigating circumstances, and affirmed Leslie’s death sentence.[2]
Leslie filed a timely post-conviction petition for a writ of habeas corpus. The district court appointed counsel to represent Leslie but declined to conduct an evidentiary hearing. The district court denied Leslie’s petition, and this appeal followed.

DISCUSSION

Ineffective assistance of counsel

Leslie argues that trial and appellate counsel rendered constitutionally ineffective assistance. Claims of ineffective assistance of counsel are evaluated under the two-part test set forth in Strickland v. Washington.[3] Under Strickland, a petitioner must demonstrate that counsel’s performance fell below an objective standard of reasonableness and that counsel’s deficient performance prejudiced the defense.[4]’To establish prejudice based on trial counsel’s deficient performance, a petitioner must show that but for counsel’s errors there is a reasonable probability that the verdict would have been different.[5] To establish prejudice based on appellate counsel’s deficient performance, a petitioner must show that the omitted issues would have had a reasonable probability of success on appeal.[6]
Leslie claims that trial counsel was ineffective for failing to object to three of the prosecutor’s allegedly improper statements.[7]
*777 During his guilt phase closing argument, the prosecutor stated, “And on cross-examination, [Rhesa Gamble] very freely discussed how detectives allegedly planted information with her, how detectives allegedly told her that number two in the photographic lineup was [Leslie] before she even saw it. We now know that’s incorrect.” (Emphasis added.) Leslie contends that the prosecutor improperly asserted his personal opinion of Gamble’s credibility and usurped the jury’s fact-finding function by using the word “we.”
Even if we assume that trial counsel was deficient in not challenging the prosecutor’s statement, we conclude that Leslie cannot demonstrate that the error prejudiced his defense. The prosecutor’s statement addressed a portion of Gamble’s testimony in which she stated that the detectives pointed to Leslie’s picture before she had the opportunity to identify him in a photographic lineup. Immediately thereafter, the prosecutor inquired whether she picked Leslie out of the lineup of her own volition or because the detectives suggested that she do so. Gamble repeatedly stated that she picked Leslie’s photograph out of the lineup because she recognized him. Also, Gamble later testified that the detectives did not attempt to influence her with respect to the photographic lineup. Because Gamble made it clear that she identified Leslie of her own volition and not because of the detectives’ suggestion, Leslie’s claim does not raise a reasonable probability that the jury’s verdict would have been different had trial counsel objected to the prosecutor’s statement. Therefore, the district court properly denied relief on this ground.
The second allegedly improper statement occurred early in the State’s penalty phase opening statement. The prosecutor stated, “Obviously, this is a case that will not be soon erased in your minds. You are also, perhaps to a certain extent, victims. You will perhaps never forget the video tape that you saw of this killing by the defendant.” (Emphasis added.) Leslie argues that the prosecutor improperly asked the jury to view themselves as victims of Leslie’s wrongdoing. We disagree. The prosecutor did not invite the jury to feel how the convenience store clerk or patrons felt during the crime.[8] We conclude that trial counsel reasonably declined to challenge the prosecutor’s statement and the district court properly denied relief on this claim.
*778 The third alleged incident of prosecutorial misconduct occurred during the penalty phase closing argument. When addressing the mitigating evidence, the prosecutor stated:
I suggest to you that Leslie does have a substantial criminal history.
But even if you disagree with our perspective, you have to ask yourself the important question: Is this enough to mitigate the death penalty, mitigate these aggravating circumstances? Is this enough to say that he doesn’t deserve the ultimate punishment in this case?
Leslie contends that this statement misled the jury to believe that death was the presumed sentence unless he produced sufficient mitigating evidence to overcome it and trial counsel was ineffective for not objecting. We disagree. While it is possible that the jury could have been momentarily confused by the prosecutor’s statements, they were not blatantly improper. NRS 200.030(4)(a) requires the jury to conclude that the mitigating circumstances do not outweigh the aggravating circumstances before it may consider death as a possible sentence. The prosecutor’s statements can be read as proper comment on this weighing process. Because the statements were not clearly improper, it was not objectively unreasonable for trial counsel to decline to object. Moreover, the possible confusion was remedied by the district court’s instruction that the jury’s decision to impose death is ultimately discretionary.[9] Thus, we conclude that the district court properly denied relief on this ground.
*779 Leslie next contends that his appellate counsel provided constitutionally ineffective assistance by failing to challenge the constitutionality of NRS 200.033(9), which provides that a murder is aggravated if it is committed “at random and without apparent motive.” Leslie contends that the aggravator is unconstitutionally vague and ambiguous and inappropriately applied to him.
After reviewing the record on appeal, we conclude that appellate counsel was not ineffective for failing to challenge the “at random and without apparent motive” aggravator. Leslie’s argument that the aggravator is facially vague and ambiguous is not novel. In fact, we have repeatedly rejected the claim.[10] It is not objectively unreasonable for appellate counsel to abstain from raising a likely fruitless claim. Therefore, the district court properly denied relief on this ground.
We also conclude that appellate counsel was not deficient in declining to argue that the “at random and without apparent motive” aggravator was not supported by the evidence. We have consistently upheld death sentences based upon this aggravator when, as in this case, the killing was unnecessary to complete the robbery.[11] Moreover, even in the absence of a challenge, we were required by statute on direct appeal to perform an independent review of the record to determine whether sufficient evidence supported the jury’s finding as to each aggravating circumstance.[12] Given our mandatory review of the finding, appellate counsel may have reasonably chosen to focus on issues that were more likely to yield results. Thus, appellate counsel was not ineffective for declining to challenge the aggravator’s applicability and the district court properly denied relief on this ground.

The “at random and without apparent motive” aggravator

Nevertheless, we have elected to reconsider whether this aggra-vator is appropriately applied when the sole basis for it is that the *780 defendant unnecessarily killed someone in connection with a robbery.
While this claim could have been raised before and is therefore subject to the waiver provisions of NRS 34.810(l)(b), we conclude that our refusal to consider the issue would result in a fundamental miscarriage of justice.[13] We have stated that a fundamental miscarriage of justice can be demonstrated by a showing that the defendant “is actually innocent of the crime or is ineligible for the death penalty.”[14] We conclude that it is also demonstrated by the situation in this case. Because, as discussed below, we consider his claim meritorious, Leslie is actually innocent of the “at random and without apparent motive” aggravator. And because there is a reasonable probability that absent the aggravator the jury would not have imposed death, we conclude that imposing the waiver bar to this claim would amount to a fundamental miscarriage of justice.
Starting with Bennett v. State,[15] this court interpreted NRS 200.033(9), the “at random and without apparent motive” aggravator, to include unnecessary killings in connection with a robbery. Because the killing was not motivated by the desire to complete the robbery, we concluded that there was no apparent motive.[16] Since Bennett, we have approved the aggravator’s application to similar circumstances.[17] We now believe that Bennett overstated the applicability of NRS 200.033(9) to robbery-related killings.
There are several reasons why the “at random and without apparent motive” aggravator is inappropriate when it is solely based upon the fact that the killing was unnecessary to complete the robbery. First, this type of application ignores the plain meaning of the aggravator’s key words.[18] “Random” means lacking a specific pattern, purpose or objective.[19] Something is “apparent” *781 when it is easily understood or obvious.[20] And “motive” is defined as an emotion that leads one to act.[21] With these definitions in mind, it appears that the Legislature intended this aggra-vator to apply to situations where a killer selects his victim without a specific purpose or objective and his reasons for killing are not obvious or easily understood. An unnecessary killing in connection with a robbery does not always fit in this category. Typically, the victim is not selected randomly. And often a robber has a discernible motive for killing someone who can identify him or who attempts to impede the robbery.
Second, applying the “at random and without apparent motive” aggravator to killings connected with robberies is not in line with the statute’s legislative history. This aggravator was initially included in the list that was to become NRS 200.033 but at some point was deleted.[22] Later, during a meeting of the Senate Judiciary Committee, a prosecutor queried whether the bill covered “the San Francisco-type murder problem . . . that is, the motiveless, thrill-killing murders.”[23] The bill’s sponsor replied that this type of murder would fall under the “at random and without apparent motive” aggravator.[24] The committee then decided to include the aggravator in the bill.[25] There is no indication that the Legislature intended the aggravator to apply to unnecessary killings in the course of a robbery.
Third, another aggravator applies to killings connected with robberies. NRS 200.033(4) is implicated when the defendant killed “while [he] was engaged ... in the commission of or an attempt to commit or flight after committing or attempting to commit, any robbery.” Regardless of whether the murder was necessary to complete the robbery, the State may allege this aggravator any time the defendant killed in the course of or fleeing from a robbery.
For these reasons, we conclude that the “at random and without apparent motive” aggravator is misapplied to situations where the defendant unnecessarily kills another person in the course of a robbery, and we depart from our prior interpretation of it. We conclude that Bennett and its progeny strayed too far from the plain meaning of NRS 200.033(9), and therefore, overrule that line of cases. In order to use this aggravator, the State must show *782 more than the defendant unnecessarily killed another in connection with a robbery. The aggravator only applies to situations in which the defendant selected his victim without a specific purpose or objective and his reasons for the killing are not obvious or easily understood.[26]
The facts of this case do not support the jury’s finding that Leslie killed the clerk at random and without apparent motive. On the contrary, a State witness testified that Leslie cased the convenience store before robbing it and killed the clerk because he did not immediately give Leslie the money. There is another discernible motive for Leslie’s killing. By killing the clerk, Leslie prevented the clerk from later describing him to the police and identifying him at trial. While the facts certainly support the robbery and burglary aggravators, they do not support the “at random and without apparent motive” aggravator.

Reweighing

Leslie argues that this court may not reweigh the aggravating and mitigating circumstances after striking an aggravator. Leslie argues that our reweighing constitutes impermissible fact-finding and violates his statutory right to be sentenced either by a jury or three-judge panel. Leslie concedes that this court may properly conduct harmless error analysis, but that the errors in this case are not harmless so it should be remanded for a new penalty hearing.
We have addressed challenges to our ability to reweigh before. In Canape v. State,[27] after invalidating one of the aggravating circumstances, we determined that reweighing is appropriate under the Nevada Constitution. We first acknowledged that Article 6, Section 4 of the Nevada Constitution limits this court’s appellate jurisdiction in criminal cases to “questions of law alone.”[28] NRS 177.025 reiterates this limit on our jurisdiction. We next recognized that many of our duties require us to make factual determinations.[29] For example, this court is often called upon to *783 determine whether the jury’s verdict is supported by sufficient evidence. With respect to capital cases, we are required to consider whether the sentence was imposed under the influence of passion, prejudice or any arbitrary factor and whether the sentence is excessive, considering the crime and the defendant.[30] We concluded that reweighing after invalidating an aggravating circumstance is similar to these permissible duties. Therefore, we held that reweighing is proper under the Nevada Constitution and statutes.[31] We are of the same opinion today.
As Leslie concedes, this court also has the option to apply a harmless error analysis when we strike an aggravator.[32] Both options ask the same essential question: Is it clear that absent the erroneous aggravator(s) the jury would have imposed death?[33] In this case, we conclude that it is not.
As stated above, the State alleged four aggravating circumstances: (1) the murder was committed by a person who knowingly created a great risk of death to more than one person, (2) the murder was committed by a person engaged in or fleeing from a burglary, (3) the murder was committed by a person engaged in or fleeing from a robbery, and (4) the murder was committed at random and without apparent motive. The jury found all the alleged aggravators, as well as one mitigating circumstance — that Leslie had no significant criminal history. The jury also found that the mitigating circumstance did not outweigh the aggravating circumstances and imposed a death sentence. We have now invalidated two of the four aggravators. While the two remaining aggravators are certainly supported by substantial evidence, they are based on essentially the same aspect of this felony murder. Leslie also presented significant mitigating evidence. Leslie was nineteen at the time of the murder, the jury found that he had no significant criminal history, and his family testified that this crime was out of character because they knew him to be a good person. In light of these circumstances, we cannot say that the jury would have imposed death in the absence of the two erroneous aggravators. We therefore vacate Leslie’s sentence of death and remand the case for a new penalty hearing.[34]

*784
Other claims barred by the doctrine of the law of the case

Leslie raises several issues that were raised and rejected on direct appeal. In particular, Leslie argues that the district court erred by allowing the State to call Gamble after it had reached a plea agreement with her and by overruling trial counsel’s objection to the prosecutor’s request that the jury “send a message” to the defendant and other would-be criminals. Our determinations on direct appeal are the law of the case.[35] Therefore, the district court properly denied relief on these grounds.

CONCLUSION

While we conclude that Leslie received constitutionally effective assistance of trial and appellate counsel, we agree with him that the record does not support the jury’s finding with respect to the “at random and without apparent motive” aggravator. After considering the remaining aggravating and mitigating circumstances, we cannot say that the jury would have imposed death in the absence of the erroneous aggravators. We therefore vacate Leslie’s sentence of death and remand this case for a new penalty hearing.
Maupin, Leavitt and Becker, JL, concur.

Leslie v. State, 114 Nev. 8, 21-22, 952 P.2d 966, 975-76 (1998).

Id. at 22-24, 952 P.2d at 976-77.

 466 U.S. 668 (1984).

 Id. at 687.

 Id. at 694.

 Kirksey v. State, 112 Nev. 980, 998, 923 P.2d 1102, 1114 (1996).

 We will not revisit Leslie’s independent claims that the district court abused its discretion by not sua sponte tempering the prosecutor’s statements. We rejected these claims on direct appeal. Leslie, 114 Nev. at 18-19, 952 P.2d at 973-74. The doctrine of the law of the case precludes reconsideration. Hall v. State, 91 Nev. 314, 535 P.2d 797 (1975).

See Williams v. State, 113 Nev. 1008, 1020, 945 P.2d 438, 445 (1997), receded from on other grounds by Byford v. State, 116 Nev. 215, 994 P.2d 700 (2000); Doyle v. State, 104 Nev. 729, 734, 765 P.2d 1156, 1159-60 (1988); Williams v. State, 103 Nev. 106, 109, 734 P.2d 700, 702-03 (1987); Jacobs v. State, 101 Nev. 356, 359, 705 P.2d 130, 132 (1985).

The instruction required the jury to determine:
(a) Whether an aggravating circumstance or circumstances . . . exist; and
(b) Whether a mitigating circumstance or 'circumstances . . . exist; and
(c) Based upon these findings whether a defendant should be sentenced to life imprisonment or death.
The jury may impose a sentence of death only if (1) the jurors unanimously find at least one aggravating circumstance has been established beyond a reasonable doubt and (2) the jurors unanimously find that there are no mitigating circumstances sufficient to outweigh the aggravating circumstance or circumstances found.
(Emphasis added.) An instruction that the jury may impose a death sentence if mitigating circumstances do not outweigh aggravating circumstances is proper: it does not require the defendant to establish mitigating circumstances, nor does it require the jury to impose a death sentence. See Wesley v. State, 112 Nev. 503, 517, 916 P.2d 793, 803 (1996); Bennett v. State, 106 Nev. 135, 144-45, 787 P.2d 797, 803 (1990).
We have since provided a standard instruction on this issue for use in capital cases. See Geary v. State, 114 Nev. 100, 105, 952 P.2d 431, 433 (1998); see also Evans v. State, 117 Nev. 609, 635-36, 28 P.3d 498, 516-17 (2001). Leslie’s trial preceded our opinion in Geary.

See, e.g., Nika v. State, 113 Nev. 1424, 1435-36, 951 P.2d 1047, 1054-55 (1997); Greene v. State, 113 Nev. 157, 172-73, 931 P.2d 54, 63-64 (1997), receded from on other grounds by Byford, 116 Nev. 215, 994 P.2d 700.

See, e.g., Nika, 113 Nev. at 1436-38, 951 P.2d at 1055-56; Paine v. State, 110 Nev. 609, 615-16, 877 P.2d 1025, 1028-29 (1994); Lane v. State, 110 Nev. 1156, 1167, 881 P.2d 1358, 1366 (1994), vacated on other grounds on rehearing, 114 Nev. 299, 956 P.2d 88 (1998); Paine v. State, 107 Nev. 998, 999-1000, 823 P.2d 281, 282 (1991); Bennett v. State, 106 Nev. 135, 143, 787 P.2d 797, 802 (1990).

NRS 177.055(2)(b).

 See Pellegrini v. State, 117 Nev. 860, 887, 34 P.3d 519, 537 (2001) (procedural bars can be overcome by demonstrating that the court’s failure to review an issue would result in a fundamental miscarriage of justice).

Id.

 106 Nev. at 143, 787 P.2d at 802.

 Id.

 See, e.g., Nika, 113 Nev. at 1436-38, 951 P.2d at 1055-56; Paine, 110 Nev. at 616, 877 P.2d at 1028-29; Lane, 110 Nev. at 1167, 881 P.2d at 1366; Paine, 107 Nev. at 999-1000, 823 P.2d at 282.

 See Carson City District Attorney v. Ryder, 116 Nev. 502, 505, 998 P.2d 1186, 1188 (2000) (“Words in a statute will generally be given their plain meaning, and when a statute is clear on its face, courts may not go beyond the statute’s language to consider legislative intent.”).

The American Heritage College Dictionary 1131 (3d ed. 2000).

Id. at 65.

Black’s Law Dictionary 1034 (7th ed. 1999).

S.B. 220, 59th Leg. (Nev. 1977).

Hearing on S.B. 220 Before the Senate Judiciary Comm., 59th Leg., at 10 (Nev., March 31, 1977) (statement of Larry R. Hicks, Washoe County District Attorney).

 Id.

 Id.

See, e.g., Floyd v. State, 118 Nev. 156, 42 P.3d 249 (2002) (appellant walked to a supermarket and, without any explanation, opened fire on the employees, killing four people); Greene v. State, 113 Nev 157, 931 P.2d 54 (1997) (appellants wanted to see the size of the hole that an assault rifle could make in something, happened upon two people camping, and repeatedly shot them), receded from on other grounds by Byford, 116 Nev 215, 994 P.2d 700; Ford v. State, 102 Nev 126, 717 P.2d 27 (1986) (appellant drove on a crowded city sidewalk for approximately five blocks, killing seven people and injuring many more).

 109 Nev. 864, 859 P.2d 1023 (1993).

 Id. at 881-82 & n.15, 859 P.2d at 1034 & n.15.

 Id. at 882, 859 P.2d at 1034-35.

NRS 177.055(2).

Canape, 109 Nev. at 882, 859 P.2d at 1035.

Id.; see also Bridges v. State, 116 Nev. 752, 765, 6 P.3d 1000, 1010 (2000); Chappell v. State, 114 Nev. 1403, 1410, 972 P.2d 838, 842 (1998); Witter v. State, 112 Nev. 908, 930, 921 P.2d 886, 900-01 (1996), receded from on other grounds by Byford, 116 Nev. 215, 994 P.2d 700.

See Canape, 109 Nev. at 882, 859 P.2d at 1035.

See Lane v. State, 114 Nev. 299, 956 P.2d 88 (1998) (after invalidating three of the five aggravating circumstances, this court remanded for a new penalty hearing).

Hall, 91 Nev. 314, 535 P.2d 797.