## ROBERT LEE McCONNELL, Appellant, *v.* THE STATE OF NEVADA, Respondent.

No. 42101

March 24, 2005                              107 P.3d 1287

*Michael R. Specchio,* Public Defender, and *Cheryl D. Bond,* Deputy Public Defender, Washoe County, for Appellant.

*Brian Sandoval,* Attorney General, Carson City; *Richard A. Gammick,* District Attorney, and *Terrence P. McCarthy,* Deputy District Attorney, Washoe County, for Respondent.

*David J. Roger,* District Attorney, and *Steven S. Owens,* Chief Deputy District Attorney, Clark County, for Amicus Curiae State of Nevada.

*Philip J. Kohn,* Public Defender, Clark County; *Franny A. Forsman,* Federal Public Defender, and *Michael L. Pescetta,* Assistant Federal Public Defender, Las Vegas; and *JoNell Thomas,* Las Vegas, for Amicus Curiae Nevada Attorneys for Criminal Justice.

# OPINION

*Per Curiam:*

Late last year in *McConnell v. State*,[2] this court affirmed appellant Robert Lee McConnell's judgment of conviction of first-degree murder and sentence of death. The State, however, seeks rehearing, challenging our holding that "a felony may not be used both to establish first-degree murder and to aggravate the murder to capital status."[3] The Clark County District Attorney ("amicus") has filed an amicus brief in support of the State's position. At our direction, McConnell filed an answer to the rehearing petition, and the Nevada Attorneys for Criminal Justice also filed an amicus brief, opposing rehearing. We conclude that the State fails to demonstrate that this court overlooked or misapprehended any material points of law or fact, so we deny the petition.

NRAP 40(a)(1) requires a petition for rehearing to "state briefly and with particularity the points of law or fact which in the opinion of the petitioner the court has overlooked or misapprehended." NRAP 40(c)(1) provides: "Matters presented in the briefs and oral arguments may not be reargued in the petition for rehearing, and no point may be raised for the first time on rehearing." Under NRAP 40(c)(2), this court may consider rehearing "[w]hen the court has overlooked or misapprehended a material fact in the record or a material question of law" or "has overlooked, misapplied or failed to consider a statute, procedural rule, regulation or decision directly controlling a dispositive issue in the case."

Counsel for the State in this matter asserts that McConnell never raised the issue of the propriety of using an underlying felony as an aggravating circumstance in a felony murder and that

---

[2]120 Nev. 1043, 102 P.3d 606 (2004).

[3]*Id.* at 1073, 102 P.3d at 627.

this court acted unfairly in deciding the issue without notice to the State. He also complains that this court's opinion "falsely besmirched" his reputation, particularly by indicating that his "failure to respond to the non-existent argument somehow contributed" to the court's disposal of this appeal without oral argument.[4] Counsel, however, is wrong.

First, as page 3 of the State's own petition for rehearing reflects, the table of contents to McConnell's opening brief expressly lists as argument VIII(A): "Burglary aggravator was improper because it alleged entry with intent to murder, based upon the underlying murder and the single act should not be allowed to count as the underlying offense and as an enhancing offense." Second, McConnell's opening brief at pages 48 and 49 specifically urges that the penalty was improperly enhanced to death based upon improper use of the felony murder aggravator and relies in large part upon the concurring opinion in our 2002 decision in *Leslie v. Warden,*[5] quoting it as follows:

> To meet constitutional muster, a capital sentencing scheme "must genuinely narrow the class of persons eligible for the death penalty and must reasonably justify the imposition of a more severe sentence on the defendant compared to others found guilty of murder." In upholding the use of underlying felonies to aggravate felony murders, this court has never addressed *Lowenfield v. Phelps,* [484 U.S. 231 (1988),] a United States Supreme Court case that has important implications for this issue. Under *Lowenfield,* an aggravating circumstance can be identical to an element of the capital murder itself as long as the state statute defines capital murder narrowly enough to begin with. However, when a state broadly defines capital offenses, the narrowing must occur through the jury's finding of aggravating circumstances at the penalty phase. Nevada broadly defines capital offenses, particularly felony murder. Thus, the required narrowing must occur through the jury's finding of aggravating circumstances.
>
> The question is, does the felony aggravator set forth in NRS 200.033(4) genuinely narrow the death eligibility of felony murderers? First, compared to the felony basis for felony murder, NRS 200.033(4) limits somewhat the felonies that serve to aggravate a murder. But the felonies it includes are those most likely to underlie felony murder in the first place. Second, the aggravator applies only if the defendant "[k]illed

[4]*See id.* at 1062 n.36, 102 P.3d at 620 n.36 ("The State's failure to address this issue contributed to our decision not to conduct oral argument in this case.").

[5]118 Nev. 773, 784-86, 59 P.3d 440, 448-49 (2002) (MAUPIN, J., concurring).

or attempted to kill'' the victim or ''[k]new or had reason to know that life would be taken or lethal force used.'' This is narrower than felony murder, which in Nevada requires only the intent to commit the underlying felony. This notwithstanding, it is quite arguable that Nevada's felony murder aggravator, standing alone as a basis for seeking the death penalty, fails to genuinely narrow the death eligibility of felony murderers in Nevada.[6]

Counsel for the State also claims that he was wrongly criticized for not responding to the Supreme Court decision in *Lowenfield* when McConnell ''never made a single mention'' of that case. Counsel is again mistaken. The above quotation from *Leslie* in McConnell's brief clearly mentions and argues *Lowenfield*. In point of fact, the concurrence in *Leslie,* relied upon at length by McConnell, encouraged the parties to litigate the issue of narrowing on remand of that case and, by implication, invited the bench and bar generally to reconsider the issue. That McConnell chose to do so and the State did not does not mean that the issue was not framed in this appeal. It was, and we properly undertook to reach it.[7]

Furthermore, we observe that this court's examination of this state's death penalty scheme does not stand alone. The United States Supreme Court itself has in recent years reexamined its own precedent and redirected the national debate over the death penalty, placing this field of jurisprudence in transition in many respects.[8]

Counsel further incorrectly asserts that our opinion made ''no mention of the State Constitution'' and is based only on federal law. *McConnell* explicitly relied on the Nevada Constitution in addition to federal law: ''We therefore deem it impermissible under the United States and Nevada Constitutions to base an aggravating circumstance in a capital prosecution on the felony upon which a

---

[6]*Id.* at 784-85, 59 P.3d at 448-49 (MAUPIN, J., concurring) (footnotes omitted).

[7]We have not in any respect attempted to ''besmirch'' counsel's reputation. We recognize his long service to his community and the Washoe County District Attorney's Office and his most distinguished record as an advocate before this court.

[8]*E.g., Roper v. Simmons,* 543 U.S. 551 (2005) (holding that the Eighth Amendment's prohibition of cruel and unusual punishment precludes the execution of offenders who were under 18 years of age when their crimes were committed); *Ring v. Arizona,* 536 U.S. 584 (2002) (holding that a capital sentencing scheme under which a judge determines aggravating circumstances violates the Sixth Amendment right to a jury trial); *Atkins v. Virginia,* 536 U.S. 304 (2002) (holding that the Eighth Amendment precludes the execution of the mentally retarded).

felony murder is predicated."[9] And we specifically identified the provisions of the Nevada Constitution that independently require aggravating circumstances to narrow death eligibility: "Nevada's own constitutional bans against the infliction of 'cruel or unusual punishments' and the deprivation of life 'without due process of law.' "[10]

The rehearing petition and the brief by amicus also fail to show that we overlooked or misapprehended any material points of law or fact in regard to the substance of our decision in *McConnell.*

Amicus first points out accurately that *McConnell* did not address whether the ruling regarding felony aggravators is retroactive, but we did not overlook this issue. Before deciding retroactivity, we prefer to await the appropriate post-conviction case that presents and briefs the issue. Amicus also informs us that it is currently prosecuting several cases that were remanded for new penalty hearings and claims that "it is impossible to know at this point whether the application of the felony aggravator at the new penalty hearing is permissible under the Court's ruling." This question, which is distinct from retroactivity in post-conviction collateral proceedings, is hardly impossible to answer. Our caselaw makes clear that new rules of criminal law or procedure apply to convictions which are not final.[11]

The State and amicus claim that *McConnell* conflicts with *Schad v. Arizona,*[12] where a majority of the Supreme Court agreed that Arizona's defining first-degree murder as either premeditated or felony murder without requiring a jury to agree unanimously on either theory in order to convict did not violate due process. But our opinion does not require jurors to agree on one theory to convict a defendant of first-degree murder. We simply advised the State that if it charges alternative theories of first-degree murder and seeks a death sentence, jurors should receive a special verdict form that allows them to indicate what theory they base any mur-

---

[9]*McConnell,* 120 Nev. at 1069, 102 P.3d at 624.

[10]*Id.* at 1063 & n.46, 102 P.3d at 621 & n.46.

[11]*See Clem v. State,* 119 Nev. 615, 627-28, 81 P.3d 521, 530-31 (2003); *see also Griffith v. Kentucky,* 479 U.S. 314, 321 n.6 (1987) (stating that a conviction becomes final when judgment has been entered, the availability of appeal has been exhausted, and a petition for certiorari to the Supreme Court has been denied or the time for such a petition has expired).

[12]501 U.S. 624, 630-45 (1991) (plurality opinion); *id.* at 648-52 (Scalia, J., concurring).

der conviction on. "Without the return of such a form showing that the jury did not rely on felony murder to find first-degree murder, the State cannot use aggravators based on felonies which could support the felony murder."[13] Amicus further argues: "If premeditation and felony murder have been held to constitute the same mens rea element, then it is contrary to reason that the felony aggravator narrows one theory of first-degree murder and not the other." Amicus implies, inaccurately, that premeditation and felony murder are identical. As this court has explained, "the commission of a felony and premeditation are merely alternative means of establishing the single *mens rea* element of first degree murder."[14] Thus, they are *different* ways of satisfying a single element. It is therefore not "contrary to reason" to recognize that when felony murder is used both to satisfy that element and to establish an aggravating circumstance, the required narrowing process may not be accomplished.

Citing *Schad*, the State also inquires what should be done "if all of the charged theories have been proved, or if the jury is split regarding the theory of liability." *McConnell* makes clear that if one or more jurors decide to convict based only on a finding of felony murder, then prosecutors cannot use the underlying felony as an aggravator in the penalty phase.[15] The opinion does not expressly address whether use of a felony aggravator is precluded if the jurors find unanimously that a murder was deliberate and premeditated but also find that it was felony murder. It is not a ground for rehearing that this issue remains for resolution in a case which squarely presents it.

Amicus next claims that this court misconstrued the narrowing requirement of *Zant v. Stephens*[16] and applied an incorrect standard. However, amicus quotes Supreme Court caselaw dealing with vagueness and overbreadth issues and disregards the specific question decided by *McConnell* and the Supreme Court decision germane to that question, *Lowenfield v. Phelps.*[17] Amicus suggests that we should have decided this case based on consideration of Nevada's capital sentencing scheme in its entirety. We disagree. The pertinent issue in this case is whether felony aggravators constitutionally narrow death eligibility in a felony murder, not

---

[13]*McConnell,* 120 Nev. at 1069, 102 P.3d at 624.

[14]*Holmes v. State,* 114 Nev. 1357, 1363-64, 972 P.2d 337, 341 (1998) (citing *Schad,* 501 U.S. at 637, for the same proposition under Arizona law).

[15]*McConnell,* 120 Nev. at 1069, 102 P.3d at 624.

[16]462 U.S. 862, 877 (1983).

[17]484 U.S. 231, 241-46 (1988).

whether the statutory scheme in the abstract can withstand a general constitutional challenge.[18]

Amicus argues next that this court misconstrued the authority relied on in *McConnell*. First, amicus distinguishes two decisions from other jurisdictions which we cited, *State v. Middlebrooks*[19] and *Engberg v. Meyer*,[20] both of which deemed the use of the felony in a felony murder as an aggravator to be improper. Amicus fails, however, to point out any misapprehension by this court. Our opinion did not rely on the two decisions; it simply cited them and others as examples of the varied decisions by other courts on this issue.[21] Amicus nevertheless argues that the aggravators at issue in *Middlebrooks* and *Engberg* were identical with felony murder, whereas in Nevada the felony aggravator is narrower than felony murder. This still reveals no misapprehension; our opinion recognized and discussed the narrowing effect of Nevada's felony aggravator but concluded that the effect was too slight to satisfy either the United States or the Nevada Constitution.[22]

Amicus also asserts that we misconstrued and misapplied *Lowenfield* because in that case the Supreme Court concluded that a felony may be used as both an element of felony murder and a felony aggravator while we reached the "opposite conclusion." This simplistic analysis is of no value. *McConnell* expressly recognized that under *Lowenfield* it is possible for an element of capital murder to serve also as an aggravator—if the definition of capital murder is sufficiently narrow to begin with.[23] Thus, we asked, "is Nevada's definition of capital felony murder narrow enough that no further narrowing of death eligibility is needed once the defendant is convicted?"[24] The answer is no, as we concluded.[25]

But amicus also takes issue with this conclusion and accuses this court of stating, in "conclusory fashion," that Nevada's definition of felony murder does not provide constitutional narrowing. According to amicus, "[i]t remains unknown why the Court has decided to simply count the number of felonies contained within the

---

[18]*Cf. McConnell,* 120 Nev. at 1070, 102 P.3d at 625 ("We hold to our precedent rejecting . . . general challenges to Nevada's capital sentencing scheme.").

[19]840 S.W.2d 317, 341-47 (Tenn. 1992), *superseded by statute as stated in State v. Stout,* 46 S.W.3d 689, 705-06 (Tenn. 2001).

[20]820 P.2d 70, 86-92 (Wyo. 1991).

[21]*McConnell,* 120 Nev. at 1063 n.42, 102 P.3d at 620 n.42.

[22]*Id.* at 1066-69, 102 P.3d at 622-24.

[23]*Id.* at 1064-65, 102 P.3d at 621.

[24]*Id.* at 1065, 102 P.3d at 621.

[25]*Id.* at 1065, 102 P.3d at 622.

first-degree felony murder statute and conclude that it is too broad.'' Our opinion, however, explained why felony murder in Nevada requires further narrowing, and we did not simply count the number of felonies in the statute. We noted that under *Lowenfield* there are two ways a regime of capital punishment can constitutionally narrow death eligibility: a legislature may provide a sufficiently narrow definition of capital offenses, or a legislature may more broadly define such offenses and provide for narrowing at the penalty phase by a jury's finding of aggravating circumstances.[26] We then made clear why Nevada's regime falls in the latter category. We pointed out that Nevada defines first-degree felony murder more broadly than does the Louisiana statute discussed in *Lowenfield*; most important, the offense in Nevada requires no specific intent to kill or to inflict great bodily harm, as does the Louisiana offense.[27] We further pointed out that Nevada's definition of felony murder is broader than that set forth in the death penalty statute extant in 1972 when the Supreme Court temporarily ended executions in the United States.[28] Consequently, felony murder in Nevada is so broadly defined that further narrowing of death eligibility by the finding of aggravating circumstances is necessary.[29] Amicus fails to address this analysis, let alone show that it is in error.

Amicus also claims that

> without any citations for support the Court concluded that the narrowing capacity of the felony aggravators is theoretical and in practical terms, the aggravators cover the vast majority of first-degree felony murders. Further, the Court stated that the second half of the felony aggravator statute can be overlooked and may not receive consideration by the jury. Such statements by the Court are conclusory, speculative and without support.

Although implying disagreement with our conclusion in *McConnell* that the felony and sexual-penetration aggravators encompass the vast majority of felony murders,[30] amicus does not identify any weakness in our reasoning or provide any data to contradict it. And we unassailably supported our concern that juries may overlook ''the second half of the felony aggravator,''—that is, the intent element—by pointing out that in the penalty phase of this very case the jury was not instructed on the required intent and therefore gave it no consideration.[31]

---

[26]*Id.* at 1064, 102 P.3d at 621.

[27]*Id.* at 1065-66, 102 P.3d at 622.

[28]*Id.* at 1066, 102 P.3d at 622.

[29]*Id.*

[30]*Id.* at 1067, 102 P.3d at 623.

[31]*Id.* at 1068, 102 P.3d at 624.

Amicus is correct that a defendant in Nevada becomes death eligible only after two steps: a finding that at least one aggravator exists and a finding that the mitigating evidence does not outweigh any aggravator or aggravators.[32] *McConnell* did not discuss the second step, and therefore amicus says this court failed to discern that the capital sentencing scheme as a whole sufficiently narrows death eligibility. The potential effect of mitigating evidence does not provide the required narrowing. In effect, amicus advances the novel and unsound argument that an aggravator that fails to constitutionally narrow death eligibility is of no concern because of the possibility that a jury may not return a death sentence due to mitigating circumstances.

Finally, amicus asserts that the weight of authority is against this court's application of *Lowenfield* and cites four decisions from other jurisdictions.[33] Amicus does not indicate how the decisions—which considered Arkansas, Delaware, and Florida statutes—reveal any material misapprehension by this court in this case. We actually cited three of these decisions in *McConnell* and noted that they deemed the use of the felony in a felony murder as an aggravator to be proper.[34] The essential point that amicus overlooks is that the analysis and result in this case are dependent on the pertinent Nevada statutes.

Because no grounds for rehearing have been presented, we deny the State's petition.

---

[32]NRS 175.554(3); *Hollaway v. State,* 116 Nev. 732, 745, 6 P.3d 987, 996 (2000).

[33]*Deputy v. Taylor,* 19 F.3d 1485, 1500-02 (3d Cir. 1994); *Johnson v. Dugger,* 932 F.2d 1360, 1368-70 (11th Cir. 1991); *Perry v. Lockhart,* 871 F.2d 1384, 1392-93 (8th Cir. 1989); *Ferguson v. State,* 642 A.2d 772, 780-81 (Del. 1994).

[34]*McConnell,* 120 Nev. at 1063 n.42, 102 P.3d at 620 n.42.