OPINION
By the Court,
Maupin, L:
In this opinion, we consider the State’s contention that McConnell v. State[1] was wrongly decided and its alternative argument that a new trial is an appropriate remedy when the sole aggravating circumstance in a death penalty case has been determined to be invalid under McConnell during post-conviction review. We reject the State’s contention that McConnell was wrongly decided, and we conclude that a new penalty hearing is the proper remedy under the circumstances described by the State.

*971
FACTS

Respondent Shawn Russell Harte and two codefendants, Latisha Babb and Weston Sirex, murdered a Reno cab driver during the course of a robbery. Harte subsequently admitted to sheriff’s deputies that he shot the cab driver in the head. The State alleged that Harte committed willful, premeditated, and deliberate murder or, alternatively, felony murder. The jury was not asked to return a special verdict form indicating upon which murder theory it relied. The jury found Harte guilty of first-degree murder with the use of a deadly weapon and robbery with the use of a deadly weapon.
During the penalty phase of the trial, the jury found only one aggravating circumstance: the murder was committed during the course of a robbery. Harte was sentenced to death. We affirmed the judgment of conviction.[2] Harte then filed a post-conviction petition for a writ of habeas corpus, which the district court denied. On appeal, we dismissed Harte’s appeal as untimely and denied his subsequent petitions for rehearing and en banc reconsideration.[3]
Harte filed a second post-conviction petition for a writ of habeas corpus in the district court. In addition to his claims of ineffective assistance of counsel, Harte alleged that pursuant to McConnell, the aggravating circumstance found by the jury was invalid because it was improperly based on the felony used to obtain the first-degree murder conviction. Harte later filed a supplement to his petition.
The State filed a response to the petition and a motion for an order regarding the scope of relief. In the motion, the State acknowledged that Harte may be entitled to relief pursuant to McConnell and Bejarano v. State[4] and that the appropriate remedy was a new trial rather than a new penalty hearing. Thereafter, Harte filed a notice in the district court that he was abandoning all claims that could result in a new trial and that his sole focus was obtaining a new penalty hearing.
The district court conducted a hearing on the State’s motion and Harte’s habeas petition and concluded that the appropriate remedy for a McConnell error was a new penalty hearing, not a new trial. The district court vacated the death sentence, affirmed the guilty *972 verdict, and stayed further proceedings pending appellate review.[5] This appeal followed.

DISCUSSION

The State argues that McConnell was wrongly decided and should be reversed. Alternatively, the Státe argues that under the unique circumstances of this case, the district court erred by declaring that a new trial was not a permissible remedy.

McConnell was properly decided

The State contends that the district court’s decision to partially grant Harte’s second post-conviction petition for a writ of habeas corpus was erroneous because it was based on McConnell and McConnell was wrongly decided. The State specifically argues that McConnell should be revisited because it contains “three major flaws.”
First, the State contends that our analysis in McConnell is flawed because it begins with the definition of first-degree murder instead of a “generic offense of felonious homicide,”[6] the common-law definition of murder, or even the notion of felonious murder. The State claims that if the McConnell court’s analysis had started with the common-law definition of murder or the notion of a felonious homicide, the court would have recognized that Nevada’s statutory scheme genuinely narrows the class of individuals that are eligible for the death penalty.[7]
In McConnell, we relied upon the analytical framework of Lowenfield v. Phelps[8] to determine the constitutionality of basing an aggravating circumstance on the predicate felony in a capital prosecution of a felony murder.[9] We noted that “a capital sentenc *973 ing scheme ‘must genuinely narrow the class of persons eligible for the death penalty and must reasonably justify the imposition of a more severe sentence on the defendant compared to others found guilty of murder’ ’ ’ to meet federal and state constitutional requirements.[10] We observed that this narrowing function may be accomplished by narrowly drawn definitions of capital offenses or through aggravating circumstances found by a jury during the penalty phase of a trial.[11] We evaluated Nevada’s capital sentencing scheme as it applies to felony murder, determined that Nevada broadly defines capital felony murder, and concluded that the felony aggravating circumstance set forth in NRS 200.033(4) did not genuinely narrow the class of felony murderers that are eligible for the death penalty.[12] Under these circumstances, the State has failed to demonstrate that our analysis in McConnell is flawed.
Second, the State contends that our analysis in McConnell is flawed because it is based on the question of whether the statutory aggravating circumstances “sufficiently” exclude an adequate number of murderers from the death penalty. The State claims that the proper question, as announced in Lowenfield, is whether the scheme “genuinely” narrows the class of murderers eligible for the death penalty. The State asserts that the term “genuine” calls for an objective determination of whether the statutory scheme narrows the class of murderers eligible for the death penalty.[13]
In McConnell, we began our discussion on aggravating circumstances by asking “in a case of felony murder does either of these two aggravators ‘genuinely narrow the class of persons eligible for the death penalty and . . . reasonably justify the imposition of a more severe sentence on the defendant compared to others found guilty of murder?’ ”[14] In the analysis that followed, we determined that the felony and sexual-penetration aggravating circumstances reached all but four of the felonies contained in the felony-murder statute and that those four remaining felonies are less likely to involve death.[15] We further determined that the felony aggravating *974 circumstance’s intent element did “little more than state the minimum constitutional requirement to impose death for felony murder.”[16] And we concluded that these aggravating circumstances may “theoretically” narrow the class of persons eligible for the death penalty, but they do not “genuinely” narrow that class, and therefore they do not meet constitutional muster.[17] Under these circumstances, the State has failed to demonstrate that we used the wrong constitutional standard for analyzing the narrowing function of Nevada’s murder statutes.
Third, the State contends that the McConnell court’s analysis is flawed because it discounted the requirement that the felony aggravating circumstance must be accompanied by certain mental states.[18] The State claims that Nevada’s statutory scheme, by including an intent element with the felony aggravating circumstance, “has objectively excluded some first-degree murders from the death penalty.’ ’
In McConnell, we specifically addressed the felony aggravating circumstance intent element, noting that it (1) was different than the intent required for a felony-murder conviction, (2) largely mirrored the constitutional standard and did little to narrow the class of persons eligible for the death penalty, (3) lacked the specificity of the capital felony-murder definition that met the constitutional narrowing requirement in Lowenfield, and (4) could be overlooked and not considered by the jury.[19]
We also discussed the felony aggravating circumstance intent element on rehearing, stating that it
“is narrower than felony murder, which in Nevada requires only the intent to commit the underlying felony. This notwithstanding, it is quite arguable that Nevada’s felony murder aggravator, standing alone as a basis for seeking the death penalty, fails to genuinely narrow the death eligibility of felony murderers in Nevada.”[20]
Under these circumstances, the State has failed to demonstrate that our consideration of the felony aggravating circumstance intent element was inadequate.
*975 Having carefully considered the State’s arguments, we decline to overrule McConnell or contravene the district court’s application of its holding in this instance.

A new penalty hearing is the remedy under the circumstances of this case

The State contends that the district court erred by concluding that the only remedy for a prejudicial McConnell error is a new penalty hearing. The State claims that this case is unique because there was only one aggravating circumstance and the State is willing to amend the charging document by removing the felony-murder theory. The State specifically argues that the McConnell error was a charging error and therefore a new trial is the appropriate remedy to restore the parties to status quo ante.
We reject the State’s contention that a McConnell error constitutes a charging error. ‘ ‘The State may proceed on alternate theories of liability as long as there is evidence in support of those theories.”[21] Here, the State exercised its discretion to charge Harte on alternative theories of murder. The State’s exercise of discretion in this regard did not constitute a trial error. However, the State’s decision to base an aggravating circumstance on the robbery that was also the basis for the felony-murder theory violated the rule in McConnell and resulted in a sentencing error. The State has offered no relevant authority or cogent bases upon which to conclude that striking a sole aggravating circumstance that violates McConnell mandates a new trial rather than a new penalty hearing.
As a general rule, when an aggravating circumstance is invalidated, a new penalty hearing is the appropriate remedy unless it is “clear beyond a reasonable doubt that absent the invalid aggravator[ ] the jury still would have imposed a sentence of death.’ ’[22] The same analysis applies when an aggravating circumstance is invalidated under McConnell. Accordingly, we conclude that the district court did not err by striking the felony aggravating circumstance, determining that the error was prejudicial given that it was the only aggravating circumstance found by the jury, and concluding that the appropriate remedy was a new penalty hearing.[23]

*976
CONCLUSION

For the reasons discussed above, we reject the State’s contention that McConnell was wrongly decided and conclude that a new penalty hearing is the proper remedy in cases where the sole aggravating circumstance has been struck. We therefore affirm the district court’s findings of fact, conclusions of law, and judgment.
Gibbons, C. J., Douglas and Cherry, JJ., concur.

 120 Nev. 1043, 102 P.3d 606 (2004) (holding that it is unconstitutional to base aggravating circumstance in capital prosecution on felony that was used to obtain first-degree murder conviction), rehearing denied, 121 Nev. 25, 107 P.3d 1287 (2005).

 Harte v. State, 116 Nev. 1054, 13 P.3d 420 (2000).

 Harte v. State, Docket No. 43877 (Order Dismissing Appeal, April 7, 2005); Harte v. State, Docket No. 43877 (Order Denying Rehearing, May 19, 2005); Harte v. State, Docket No. 43877 (Order Denying En Banc Reconsideration, September 8, 2005).

 122 Nev. 1066, 146 P.3d 265 (2006) (holding that rule announced in McConnell applies retroactively).

 The district court also allowed Harte to withdraw his claims of error relating to the trial and dismissed his claims of error relating to the penalty hearing as moot.

 The State cites to Mullaney v. Wilbur, 421 U.S. 684, 688 (1975) (describing Maine’s various levels of homicide).

 To the extent that the State argues that McConnell should have been decided based on consideration of Nevada’s entire capital sentencing scheme, we note that this issue was raised on rehearing in McConnell v. State, 121 Nev. 25, 107 P.3d 1287 (2005), where we held that “[t]he pertinent issue in this case is whether felony aggravators constitutionally narrow death eligibility in a felony murder, not whether the statutory scheme in the abstract can withstand a general constitutional challenge.” Id. at 30-31, 107 P.3d at 1291.

 484 U.S. 231 (1988).

 120 Nev. 1043, 1063, 102 P.3d 606, 620 (2004).

 Id. at 1063, 102 P.3d at 620-21 (quoting Zant v. Stephens, 462 U.S. 862, 877 (1983)).

 Id. at 1064, 102 P.3d at 621 (quoting Lowenfield, 484 U.S. at 246).

 Id. at 1066-69, 102 P.3d at 622-24.

 The State cites to Arave v. Creech, 507 U.S. 463 (1993), for the proposition that the legislature acts constitutionally if the aggravating circumstance does not apply to every murderer and if it is objective.

 McConnell, 120 Nev. at 1067, 102 P.3d at 623 (quoting Zant, 462 U.S. at 877) (emphasis added).

 Id. at 1067, 102 P.3d at 623. The felony aggravator and the sexual-penetration aggravator do not reach sexual molestation of a child under the age of 14 years, child abuse, second-degree arson, and second-degree kidnapping. Id.

 Id.

 Id. at 1069, 102 P.3d at 624.

 See NRS 200.033(4) (providing that first-degree murder is aggravated when it was committed while person was engaged in an enumerated felony “and the person charged: (a) Killed or attempted to kill the person murdered; or (b) Knew or had reason to know that life would be taken or lethal force used”).

 McConnell, 120 Nev. at 1067-68, 102 P.3d at 623-24.

 McConnell v. State, 121 Nev. 25, 28, 107 P.3d 1287, 1289 (2005) (quoting Leslie v. Warden, 118 Nev. 773, 785, 59 P.3d 440, 448-49 (2002) (Maupin, J., concurring)).

Walker v. State, 116 Nev. 670, 673, 6 P.3d 477, 479 (2000).

Bejarano v. State, 122 Nev. 1066, 1081, 146 P.3d 265, 275-76 (2006); see also Archanian v. State, 122 Nev. 1019, 1040, 145 P.3d 1008, 1023 (2006), cert. denied, 127 S. Ct. 3005 (2007); Browning v. State, 120 Nev. 347, 363-64, 91 P.3d 39, 51 (2004); State v. Bennett, 119 Nev. 589, 604-05, 81 P.3d 1, 11-12 (2003); Leslie, 118 Nev. at 782-83, 59 P.3d at 446-47.

Without a comprehensive discussion of the analytics of McConnell, our concurring colleagues voice their concerns over this court’s decision in that *976 case. However, nothing in the concurrence either justifies retreat from McConnell or persuades us that the criminal justice system is less fair because of it.